UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES T. SAMMONS, JR.,

      Plaintiff,

v.                                                          Case No. 05-72841
                                                            Honorable Patrick J. Duggan

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 14, 2006.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff applied for Social Security Disability Insurance Benefits ("DIB") and

Supplemental Security Income benefits ("SSI") (collectively "benefits") in September

2001, alleging that he became disabled on February 2, 2000, approximately one month

before his 44th birthday, due to a seizure disorder. The Social Security Administration

denied Plaintiff's request for benefits initially. Upon Plaintiff's request, Administrative

Law Judge ("ALJ") James N. Gramenos conducted a *de novo* hearing on March 24, 2004.

The ALJ issued a decision on March 22, 2005, finding Plaintiff not disabled within the

meaning of the Social Security Act and therefore not entitled to benefits. The ALJ's

decision became the final decision of the Social Security Commissioner

("Commissioner") when the Social Security Appeals Council denied review. Plaintiff

thereafter initiated the pending action.

Both parties have filed motions for summary judgment, which this Court referred

to Magistrate Judge Steven D. Pepe. On May 31, 2006, Magistrate Judge Pepe filed his

Report and Recommendation (R&R) recommending that this Court deny Plaintiff's

motion for summary judgment and grant Defendant's motion. At the conclusion of the

R&R, Magistrate Judge Pepe advises the parties that they may object and seek review of

the R&R within ten days of service upon them. Plaintiff filed objections to the R&R on

June 11, 2006.

## STANDARD OF REVIEW

Under 42 U.S.C. Section 405(g):

> Any individual, after any final decision of the Commissioner
> of Social Security made after a hearing to which he was a
> party . . . may obtain a review of such decision by a civil
> action . . . The court shall have the power to enter . . . a
> judgment affirming, modifying, or reversing the decision of
> the Commissioner of Social Security, with or without
> remanding the cause for a rehearing. The findings of the
> Commissioner of Social Security as to any fact, if supported
> by *substantial evidence*, shall be conclusive . . .

42 U.S.C. § 405(g)(emphasis added); *see Boyes v. Sec'y of Health and Human Servs.*, 46

F.3d 510, 511-12 (6th Cir. 1994). "Substantial evidence is defined as 'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Abbott v. Sullivan*, 905 F.2d 918, 922-23 (6th Cir. 1990)(quoting *Richardson v. Perales*,

2

402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971)).  The Commissioner's findings are not

subject to reversal because substantial evidence exists in the record to support a different

conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986)(citing *Baker v. Kechler*,

730 F.2d 1147, 1150 (8th Cir. 1984)).  If the Commissioner's decision is supported by

substantial evidence, a reviewing court must affirm.  *Studaway v. Sec'y of Health and

Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).

      The court reviews *de novo* the parts of an R&R to which a party objects.  *See* FED.

R. CIV. P.  72(b); *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001).

## ANALYSIS

### *An ALJ considering a disability claim is required to follow a five-step process to*

**e**valuate the claim.  20 C.F.R. § 404.1520(a)(4).  If the ALJ determines that the claimant

is disabled or not disabled at a step, the ALJ need not proceed further.  *Id*.  However, if

the ALJ does not find that the claimant is disabled or not disabled at a step, the ALJ must

proceed to the next step.  *Id*.  "The burden of proof is on the claimant through the first

four steps . . . If the analysis reaches the fifth step without a finding that the claimant is

not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health and

Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see also Bowen v. Yuckert*, 482 U.S.

137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987).

      The ALJ's five-step sequential process is as follows:

    1.    At the first step, the ALJ considers whether the claimant is currently

engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).[1]

2.    At the second step, the ALJ considers whether the claimant has a severe
      medically determinable physical or mental impairment that meets the
      duration requirement of the regulations and which significantly limits the
      claimant's ability to do basic work activities.  20 C.F.R. §§
      404.1520(a)(4)(ii) and (c).[2]

3.    At the third step, the ALJ again considers the medical severity of the
      claimant's impairment to determine whether the impairment meets or equals
      an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20
      C.F.R. § 404.1520(a)(4)(iii).  If the claimant's impairment meets any
      Listing, he or she is determined to be disabled regardless of other factors.[3]
      *Id*.

4.    At the fourth step, the ALJ assesses the claimant's residual functional
      capacity and past relevant work to determine whether the claimant can
      perform his or her past relevant work.[4]  20 C.F.R. § 404.1520(a)(4)(iv).

---

[1]The ALJ concluded that Plaintiff has not engaged in substantial gainful activity since
February 2, 2000.  (A.R. at 31.)

[2]The ALJ concluded that Plaintiff  has a severe seizure disorder and substance abuse
disorder, exacerbated by alcoholic substance abuse.  (A.R. at 31.)

[3]The ALJ analyzed whether Plaintiff met Listings 11.02 and 12.09 and determined that, if
Plaintiff had not abused alcoholic beverages, he would not meet, or medically equal, any of the
listed impairments.  *(*A.R. at 31.)

[4]The ALJ found that, absent his utilization of alcoholic beverages, Plaintiff would have
the following residual functional capacity:

          perform unskilled, light work activity; avoid areas of unprotected
          heights, scaffolding, moving machinery, ladders; eliminate jobs
          that would require a worker to function in work areas with
          unprotected holes in the ground and/or open pits; and to eliminate
          jobs that would require as a job duty the direct contract with the
          general public when performing work activity.

(A.R. at 28.)  The ALJ concluded that Plaintiff is unable to perform any of his past relevant
work.  (*Id*. at 31.)

4

5.      At the fifth step, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience to see if he can do other work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find that he or she is disabled.[5] *Id*.

Plaintiff raises a number of objections to the R&R. First, he claims that the ALJ failed to give proper weight to the opinion of one of his treating physicians, Dr. A.S. "Nash" Khattar, that Plaintiff continued to have seizures even after discontinuing his consumption of alcohol. Second, Plaintiff claims the ALJ erroneously disregarded the opinion of Dr. Syed Iqbal, an agency physician, that Plaintiff meets the requirements of Listings 12.09 and 11.02A. Third, and finally, Plaintiff submits that the record did not support the ALJ's and Magistrate Judge Pepe's finding that Plaintiff's seizures are caused by his continued alcohol consumption, as opposed to prior abuse resulting in physical changes effecting his central nervous system. According to Plaintiff, there is no medical finding confirming his continued alcohol consumption.

**<u>Objection 1</u>**:

In his opinion, the ALJ considered Dr. Khatter's evaluations of Plaintiff in March and April 2000. (A.R. at 21-22.) On March 20, 2000, Dr. Khatter completed an evaluation in which he remarked that Plaintiff "admits to having six to eight beers per day

---

[5]The ALJ determined that considering Plaintiff's age, educational background, work experience, and residual functional capacity, he is capable of a range of unskilled light exertion work activity (although not the full range). (A.R. at 28 & 32.) The ALJ further concluded that there are a significant number of jobs in the national economy that Plaintiff can perform based on his exertional and non-exertional limitations. (*Id*.) The ALJ therefore concluded that Plaintiff is not under a "disability" as defined in the Social Security Act. (*Id*.) Magistrate Judge Pepe found substantial evidence on the record to support this finding. *See* R&R at 10.

5

after work." (A.R. at 187.)  Although Dr. Khatter further wrote that Plaintiff indicated

that "[h]e has been drinking much less recently . . ." (*Id.*)  Dr. Katter's impression of

Plaintiff on that date was that his condition "may have been masked when [he] was

drinking more heavily, or which could potentially be an ongoing withdrawal

phenomena." (A.R. at 189.)

The Administrative Record also contains several letters written by Dr. Khatter on

April 25, 2000.  In one letter, Dr. Khatter states that Plaintiff stopped alcohol for the last

two plus months. (A.R. at 192.)  In a second letter, Dr. Khatter writes that Plaintiff "has

completely remained off of alcohol for the last three months." (A.R. at 193.)  Yet in a

third letter, Dr. Khatter indicates that Plaintiff "has discontinued alcohol for the last

approximately four to five weeks." (A.R. at 194.)  Dr. Khatter further states in this letter

that he expects the duration of Plaintiff's disability should be temporary . . ." and that

within three months or less, Plaintiff "should be able to rejoin gainful employment." (*Id.*)

The ALJ did not discredit or disregard Dr. Khatter's medical opinion, but did find

Dr. Khatter's statements regarding Plaintiff's discontinued use of alcohol unreliable.  As

the ALJ stated, he believed Dr. Khatter had been misled by Plaintiff. (A.R. at 26.)  This

Court finds substantial evidence in the record to support this conclusion, as prior records

reflect Plaintiff's evasiveness and dishonesty regarding his alcohol use when questioned

by medical staff.  For example, Plaintiff denied daily alcohol use upon admission to the

Scottsdale Healthcare Osborn Medical Center (A.R. at 423); however he subsequently

acknowledged during his admission that he consumed two to three beers each day. (A.R.

6

at 426.) Notably, friends at Plaintiff's bedside volunteered to a physician that Plaintiff in fact drinks more than he admitted. (*Id.*) In early February 2000, Plaintiff informed a physician at the Dessert Samaritan Medical Center that he drinks alcohol intermittently, thereby contradicting Dr. Khatter's assertion in mid-April 2000, that Plaintiff stopped drinking four months earlier. (A.R. at 168.) Finally, even Dr. Khatter opined that Plaintiff's seizures may be alcohol related. (A.R. 189).

**Objection #2**:

Dr. Iqbal testified that in his medical opinion, based on his assessment of the total medical records, particularly the EEGs dated February 19, 2001 and April 2003, that Plaintiff met the Listing of Impairment category 12.09I when evaluated in conjunction with the Listing of Impairment category 11.02A. (A.R. at 24.) The ALJ in fact relied on Dr. Iqbal's assessment to conclude that Plaintiff would meet those Listings; however, the ALJ also was required to consider whether Plaintiff's use of alcohol was a contributing factor material to his impairment. (A.R. at 25.) The Court therefore finds no merit to Plaintiff's objection.

**Objection #3**:

The ALJ specifically concluded that, although severe, Plaintiff's seizure disorder would not meet any listed impairment if Plaintiff stopping using alcoholic beverages:

> The credible evidence in this case demonstrates that had claimant complied with his medically recommended treatment plan, including both taking his medications and abstaining from alcohol beverage use, the frequency and severity of his seizures would likely be diminished if not entirely eliminated.

7

(A.R. 26.)  There is substantial evidence in the record, including Plaintiff's own statement to treating physicians (despite his contemporaneous, inconsistent statements asserting abstinence), indicating that he in fact was consuming alcohol when he experienced seizures in early 2000 and in 2002, and that his seizures were induced by alcohol abuse and/or withdrawal.  For example, in April 2000, Dr. Khatter reported that Plaintiff's seizures were thought to be alcohol related.  (A.R. 194.)  Although Dr. Khatter made note of the fact that the seizures continued despite Plaintiff's discontinued use of alcohol, he added that he expected Plaintiff's condition to improve "[o]nce we have had control for a period of three months . . ."  (*Id.*)  While the evidence indicates that Plaintiff was consuming less alcohol in 2002 than 2000, the Court agrees with Magistrate Judge Pepe's analysis that a reasonable mind could accept that his continued use of alcohol– albeit less use– was a material factor in Plaintiff's continued seizure disorder.  The Court finds it notable that as the frequency of Plaintiff's consumption of alcohol diminished, so too did the frequency of his seizures.  (A.R. at 485-86.)

## Summary

The Court concludes that there was substantial evidence in the record to support the ALJ's evaluation of Plaintiff's impairments.  The Court therefore affirms the decision of the Commissioner, finding that Plaintiff is not disabled within the meaning of the Social Security Act.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for summary judgment is **DENIED**; and

8

**IT IS FURTHER ORDERED**, that Defendant's motion for summary judgment is

**GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Frederick F. Swegles, Esq.
AUSA Janet Parker

9